UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | No. 21-125 |
| DERECK CELESTIN, JR. | SECTION "E" |

## ORDER AND REASONS

The sentencing of Defendant Dereck Celestin, Jr. is set for February 16, 2023, at 11:00 a.m.[1] On February 9, 2023, Defendant filed a sealed sentencing memorandum requesting a downward variance.[2] The Government filed a response on February 14, 2023. For the foregoing reasons, Defendant's motion is **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND

On September 30, 2021, Defendant was charged by a two-count indictment.[3] On November 12, 2021, the Government filed a superseding indictment into the record.[4] Defendant pleaded guilty to Counts One and Two of the two-count superseding indictment on October 25, 2022.[5] Count One charged Defendant with knowingly or intentionally distributing five grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).[6] Count Two charged Defendant with knowingly or intentionally distributing fifty grams or more of methamphetamine, a Schedule II controlled substance, in violation

---

[1] R. Doc. 53.
[2] R. Doc. 52.
[3] R. Doc. 56.
[4] R. Doc. 21.
[5] R. Doc. 1.
[6] R. Doc. 41.

1

of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).[7] The Court accepted Defendant's guilty plea the same day.[8] In total, Defendant is responsible for 179.08 grams of crystal methamphetamine, *i.e.*, actual methamphetamine.[9]

In anticipation of Defendant's sentencing, on February 9, 2023, Defendant filed the instant motion for a downward variance.[10] The Court ordered the Government to respond on or before Tuesday, February 14, 2023, at 12:00 p.m.[11] The Government timely filed a response.[12]

In his motion, Defendant asks this Court to vary from the United States Sentencing Guidelines ("the Guidelines") for two reasons. First, Defendant asks the Court to reject the actual methamphetamine Guidelines on policy grounds and impose a sentence in line with the methamphetamine mixture Guidelines range.[13] Second, separate and apart from the policy considerations, Defendant argues his personal circumstances warrant a variance under the 18 U.S.C. § 3553(a) factors.[14] The Court first considers Defendant's request for this Court to reject the application of the actual methamphetamine Guidelines on policy grounds.

To understand Defendant's motion, the Court will provide a brief background of the Guidelines' treatment of methamphetamine offenses. For drug-trafficking crimes specifically, the Guidelines include a "Drug Quantity Table," in which "a graduated scale based on the type and quantity of drugs involved" is used to calculate a defendant's "base

---

[7] R. Doc. 21.
[8] R. Doc. 41.
[9] R. Doc. 42 at pp. 2-3.
[10] R. Doc. 52.
[11] R. Doc. 51.
[12] R. Doc. 56.
[13] R. Doc. 52 at pp. 1-5.
[14] *Id.* at pp. 5-7.

2

offense level."[15] The base offense level is one of the two factors used, in conjunction with a defendant's criminal history, to determine the recommended sentence under the Guidelines.[16]

"[T]he Guidelines make a distinction between "methamphetamine [mixture]" and "actual methamphetamine" in the Drug Quantity Table.[17] "Methamphetamine" refers to methamphetamine mixture, whereas "actual methamphetamine" or "ice" refers to purer forms of methamphetamine.[18] This distinction is made because the Guidelines use drug purity as a proxy for a defendant's culpability. The Guidelines state "the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs."[19] As a result, "[a]ll else equal, defendants caught with actual methamphetamine get longer sentences than defendants caught with methamphetamine mixture."[20]

For sentencing purposes, the impact of this distinction is severe. Indeed, "[t]he guidelines establish a 10:1 ratio in their treatment of quantities of methamphetamine mixture and actual methamphetamine or ice."[21] For example, in this case, because Defendant possessed 179.08 grams of actual methamphetamine,[22] based on the actual methamphetamine Guidelines, Defendant's base offense level would be 32.[23] A base offense level of 32 would result in a 210 to 262 month term of imprisonment.[24] However,

---

[15] *United States v. Bean*, 371 F. Supp. 3d 46, 49 (D.N.H. 2019).
[16] *Id.*
[17] *United States v. Robinson*, No. 3:21-CR-14-CWR-FKB-2, 2022 WL 17904534, at *1 (S.D. Miss. Dec. 23, 2022).
[18] *Id.*
[19] U.S.S.G. § 2D1.1 cmt. n.27(C).
[20] *Id.*
[21] *Bean*, 371 F. Supp. 3d at 50.
[22] R. Doc. 42 at pp. 2-3.
[23] U.S.S.G. § 2d1.1.(c) (Drug Quantity Table). The Court calculated the applicable ranges based on a criminal history category of VI.
[24] U.S.S.G. Ch. 5 Pt. A (Sentencing Table).

if Defendant possesses the same quantity of methamphetamine mixture, Defendant's base offense level would be 24, resulting in a 100 to 125 month term of imprisonment.[25] The Guidelines sentence for incarceration for methamphetamine mixture is less than half the Guidelines sentence for actual methamphetamine. Indeed, courts have stated "[n]o other drug is punished *more* severely based on purity" than methamphetamine.[26]

A growing body of case law suggests the distinction between actual methamphetamine and methamphetamine mixture is no longer appropriate because it is not based on empirical date, does not serve as an accurate proxy for culpability, and creates unwarranted sentencing discrepancies between methamphetamine and other drugs.[27] It is on this basis that Defendant "respectfully requests that the Court reject the methamphetamine guidelines on policy grounds and impose a sentence more in line with the methamphetamine mixture range."[28]

## **LEGAL STANDARD**

"In *United States v. Booker*, the Supreme Court held that the United States Sentencing Guidelines . . . are 'effectively advisory' and that they 'serve as one factor among several courts must consider in determining the appropriate sentence.'"[29] Although the Guidelines are not mandatory post-*Booker*, "the [G]uidelines remain the 'starting point and initial benchmark' for sentencing."[30]

Although the Guidelines are the starting point, the Court must also consider the sentencing factors outlined in 18 U.S.C. § 3553(a).[31] The Court should consider, *inter alia*,

---

[25] U.S.S.G. § 2d1.1.(c) (Drug Quantity Table); U.S.S.G. Ch. 5 Pt. A (Sentencing Table).
[26] *Robinson*, No. 3:21-CR-14-CWR-FKB-2, 2022 WL 17904534, at *1.
[27] *See, e.g., id.; Bean*, 371 F. Supp. 3d.
[28] R. Doc. 52 at p. 2.
[29] *Bean*, 371 F. Supp. 3d at 48-49.
[30] *Id.* at 49.
[31] *Id.*

4

"the nature of the offense, the history and characteristics of the defendant, and the goals of deterrence and protection of the public[,] to determine what sentence is 'sufficient, but not greater than necessary.'"[32] "The Court must make an 'individualized assessment based on the facts presented' about whether to vary upward or downward from the guidelines sentencing range. In doing so, the court may not presume that the guidelines range is reasonable."[33]

"District courts are entitled to vary from the guidelines sentencing range not only on the basis of individualized determinations specific to each defendant, but also on the basis of a categorical policy disagreement with the guidelines themselves."[34] The United States Supreme Court has recognized that "district courts are entitled to reject and vary categorically from the . . . Guidelines based on policy disagreements with those Guidelines."[35] "A district court may disagree with the Guidelines range indicated by the drug quantity table where the resulting sentence would be '"greater than necessary" to achieve § 3553(a)'s purpose.'"[36] "'With respect to the crack cocaine Guidelines,'" for example, a policy-based, "'categorical disagreement with and variance from the Guidelines is not suspect.'"[37] Likewise, the United States Court of Appeals for the Fifth Circuit "has affirmed policy-based disagreements in methamphetamine cases."[38]

---

[32] *Id.* (citing 18 U.S.C. § 3553(a) (2018)).
[33] *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 49-50 (2007)).
[34] *Id.*
[35] *Spears v. United States*, 555 U.S. 261, 265-66 (2009) (clarifying *Kimbrough v. United States*, 552 U.S. 85 (2007)).
[36] *Robinson*, No. 3:21-CR-14-CWR-FKB-2, 2022 WL 17904534, at *2 (quoting *Kimbrough*, 552 U.S. at 110).
[37] *Id.* (quoting *Spears*, 555 U.S. at 264).
[38] *Id.* (quoting *United States v. Valdez*, 268 F. App'x 293, 297 (5th Cir. 2008)).

5

## **LAW AND ANALYSIS**

Defendant asks the Court to disagree with the actual methamphetamine Guidelines on policy grounds and sentence him to the statutory minimum sentence of 120 months.[39] Defendant asks this Court to apply the methamphetamine mixture Guidelines in this case, even though he has acknowledged possession of a certain amount of actual methamphetamine.[40] He argues the distinction between actual methamphetamine and methamphetamine mixture is no longer useful as a proxy for culpability, because the average purity of methamphetamine in the United States today is over ninety percent—whether a kingpin or a low-level drug user or distributor.[41] Accordingly, Defendant argues applying the methamphetamine mixture guidelines, resulting in a sentence in line with the statutory minimum, is more appropriate.

In opposition, the Government argues a policy disagreement is not warranted because Congress and the U.S. Sentencing Commission have considered policy changes regarding purity-based guidelines and chosen not to change the statutes or Guidelines in question.[42] The Government also argues a Guidelines sentence is not "greater than necessary" to satisfy the § 3553(a) factors.[43] The Government states that, while the Government freely admits Defendant is not a "drug kingpin," "he is certainly not at the bottom of the drug dealing ladder."[44] Accordingly, the Government argues a Guidelines sentence for actual methamphetamine is appropriate.[45]

---

[39] R. Doc. 52.
[40] *Id.* at p. 2.
[41] *Id.* at p. 3.
[42] R. Doc. 56 at p. 3. The Government provided no support for these contentions.
[43] *Id.*
[44] *Id.*
[45] *Id.*

6

For the reasons that follow, the Court grants Defendant's motion and disagrees with the use of the actual methamphetamine Guidelines on policy grounds for drug-trafficking crimes involving actual methamphetamine. As noted by Defendant, "[a] growing number of district courts have declared a categorical policy disagreement with the purity-driven methamphetamine guidelines."[46] Indeed, at least eleven district courts across the United States have deviated from the Guidelines and applied the methamphetamine mixture Guidelines to all methamphetamine violations, regardless of whether the defendant possessed actual methamphetamine or methamphetamine mixture.[47] The Court finds two cases particularly persuasive.

In *United States v. Bean*, the United States District Court for the District of New Hampshire declared a categorical policy disagreement with the methamphetamine guidelines.[48] In doing so, the court walked through its rationale in detail, basing its conclusion on three factual conclusions.[49] This Court finds the reasoning employed by the District of New Hampshire in *Bean* persuasive and restates it below. First, the court determined "there appears to be no empirical basis for the Sentencing Commission's harsher treatment of offenses involving higher purity methamphetamine."[50] In addressing the first argument, the court recognized the important role played by the Sentencing Commission, noting it "has used its empirical and experiential approach to

---

[46] R. Doc. 52 at p. 2.
[47] *See Robinson*, No. 3:21-CR-14-CWR-FKB-2, 2022 WL 17904534; *United States v. Carillo*, 440 F. Supp. 3d 1148 (E.D. Ca. 2020); *United States v. Johnson*, 379 F. Supp. 3d 1213 (M.D. Ala. 2019); *United States v. Moreno*, 583 F. Supp. 3d 739 (W.D. Va. 2019); *United States v. Pereda*, No. 18-cr-00228-CMA, 2019 WL 463027 (D. Colo. Feb. 6, 2019); *Bean*, 371 F. Supp. 3d 46; *United States v. Hoover*, No. 4:17-CR-327-BLW, 2018 WL 5924500 (D. Idaho Nov. 13, 2018); *United States v. Ferguson*, No. CR17-204 (JRT/BRT), 2018 WL 3682509 (D. Minn. Aug. 2, 2018); *United States v. Saldana*, No. 1:17-cr-271-1, 2018 U.S. Dist. LEXIS 110790 (W.D. Mich. July 3, 2018); *United States v. Nawanna*, 321 F. Supp. 3d 943, 955 (N.D. Iowa 2018); *United States v. Ibarra-Sandoval*, 265 F. Supp. 3d 1249 (D.N.M. 2017).
[48] *Bean*, 371 F. Supp. 3d at 54.
[49] *Id*. at 51-54.
[50] *Id*. at 51.

7

develop sentencing guidelines that reflect a fair sentencing range."[51] However, the Court noted that "where the guidelines are not the result of the Commission's exercise of its characteristic institutional role (reliance on empirical studies and data), the guidelines are a less reliable estimation of a fair sentence and are therefore entitled to less deference."[52] In developing the guidelines for drug-trafficking convictions, the *Bean* court notes, "[t]he Commission did not exercise its institutional role and rely upon empirical data. . . . Instead, it chose to 'key the Guidelines to the statutory mandatory minimum sentences that Congress established for drug offenses.'"[53] Likewise, the court recognized, not only did the Commission not *rely* on empirical date, but "many courts have noted that no empirical data appears to justify the guidelines' 10:1 ratio."[54]

Second, the court concluded "methamphetamine purity is no longer an accurate indicator of a defendant's role in a drug-trafficking conspiracy."[55] The court noted "[t]he assumption underlying the guidelines' higher base offense levels for higher purity drugs is that purity 'is probative of the defendant's role or position in the chain of distribution.'"[56] However, the court found, this assumption "is divorced from current market reality."[57] In *Bean*, the Government conceded "the average purity of methamphetamine between 2012 and 2017 was over 90%. Indeed, the average purity of methamphetamine sampled in 2017 was even higher, at 96.9%."[58] The Court noted this has not always been the case, and "at one time, the guidelines' harsher treatment of higher

---

[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *Id.*
[55] *Id.* at 52.
[56] *Id.*
[57] *Id.*
[58] *Id.* (citing statistics from the Drug Enforcement Administration's 2018 National Drug Threat Assessment).

purity methamphetamine was more grounded in fact."[59] The court recognized that, "due to the high average purity of methamphetamine, essentially every methamphetamine case will be charged as involving actual methamphetamine rather than a methamphetamine mixture," which, in turn, "obscures other factors and creates 'false uniformity'" among all individuals charged with a methamphetamine offense, regardless of actual role.[60] On the basis of these facts, the court concluded "the purity of methamphetamine is no longer an accurate indicator of culpability."[61]

Finally, in *Bean*, the court held "the methamphetamine guidelines create unwarranted sentencing disparities between methamphetamine offenses and offenses involving other major drugs."[62] The court recognized "[m]ethamphetamine offenses receive more severe sentences than any other drug," due to the higher base offense levels for actual methamphetamine coupled with the ubiquity of high purity methamphetamine in today's market.[63] Indeed, the court reviewed Sentencing Commission statistics from 2017, and found the "average length of imprisonment for methamphetamine offenders in 2017 was 91 months, higher than for any other drug including heroin."[64] To belabor this point further, the court provided the following illustration:

> 500 grams of actual methamphetamine earns a base offense level of 34, while the same quantities of other drugs result in lower base offense levels: fentanyl (30), cocaine base (crack) (30), heroin (26), and cocaine (24). By contrast, the base offense level for 500 grams of methamphetamine mixture is 30—a level more comparable to that advised for the same quantity of other major drugs.[65]

---

[59] *Id.* "Between the 1980s and 2007, the average purity of methamphetamine fluctuated between approximately 30% and 80%." *Id.*
[60] *Id.* at 53.
[61] *Id.*
[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] *Id.* at 53-54.

9

Recognizing this harsher treatment and the lack of empirical data to support it, the court concluded the Guidelines "run[] contrary to the 'need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'"[66] The court concluded "[a]pplying the methamphetamine mixture guidelines to determine the base offense level in all methamphetamine cases will bring base offense levels for methamphetamine offenses more in line with those of comparable drug-trafficking offenses . . [and] will also remove the purity enhancement now present in all methamphetamine cases due to the high average purity of methamphetamine."[67]

Likewise, in *United States v. Robinson* the United States District Court for the Southern District of Mississippi considered whether to apply the lower methamphetamine mixture Guidelines, rather than the actual methamphetamine Guidelines, based on a policy disagreement.[68] The court granted the defendant's motion to vary from the actual methamphetamine Guidelines.[69] Like in *Bean*, the *Robinson* court reasoned there is no empirical basis for the Sentencing Commission's ten to one weight disparity between actual methamphetamine and methamphetamine mixture.[70] Indeed, the Court acknowledged the Government conceded as much in previous cases on this very issue.[71] Likewise, the court concluded that methamphetamine purity is no longer an accurate proxy for culpability.[72] The court noted that, while the Guidelines use drug purity as a proxy for culpability, "national experience suggests that is no longer true for

---

[66] *Id.* at 54 (citing 18 U.S.C. § 3553(a)).
[67] *Id.*
[68] *Robinson*, No. 3:21-CR-14-CWR-FKB-2, 2022 WL 17904534, at *1.
[69] *Id.* at *4.
[70] *Id.* at *3
[71] *Id.* (citing *United States v. Nawanna*, 321 F. Supp. 3d 943 (N.D. Iowa 2018)).
[72] *Id.*

methamphetamine."[73] Rather, "[t]he DEA data show that most methamphetamine confiscated today is 'pure' regardless of whether the defendant is a kingpin or a low-level addict," as the average purity of methamphetamine today is over ninety percent.[74] The court concluded "purity is no longer probative of the defendant's culpability."[75] The court stated "[g]iven the on-the-ground reality in methamphetamine cases, the better way to determine culpability is to examine all the circumstances of the defendant's case and life – seeing the defendant as a 'whole person,' as the Supreme Court instructed."[76] Having determined a variance was appropriate, the *Robinson* court calculated the defendant's base offense level based on the methamphetamine mixture Guidelines and proceeded with the sentencing accordingly.[77]

This Court agrees with the reasoning of *Bean* and *Robinson* and joins the growing body of courts that have disagreed with the actual methamphetamine Guidelines on policy grounds. The Court finds there is no empirical basis for the ten to one disparity between the actual methamphetamine and methamphetamine mixture Guidelines. The development in the case law is clear on this point, and although the Government argues that the "Sentencing Commission has . . . considered making changes to methamphetamine guidelines on multiple occasions but have chosen not to do so," the Government cites no support for this contention.[78]

Likewise, the Court finds, while there may have been a logical reason for the disparity at one point, the disparity is no longer probative of a defendant's culpability. In

---

[73] *Id.*
[74] *Id.*
[75] *Id.*
[76] *Id.*
[77] *Id.* at *4.
[78] R. Doc. 56 at p. 3.

11

its opposition, the Government raises concern that Defendant's role in the instant offense will not be properly accounted for with a 120 month term of imprisonment, arguing an actual methamphetamine Guidelines sentence is not "greater than necessary."[79] The Government "freely admits that [Defendant] is not a drug kingpin," but states "he is certainly not at the bottom of the drug dealing ladder,"[80] and therefore, the Government seemingly argues Defendant's *role* justifies the application of the actual methamphetamine Guidelines.[81] The Court finds this point unavailing and agrees with the reasoning of *Robinson*, in which the Southern District of Mississippi addressed this very issue.[82] The *Robinson* court found "[t]here are sentencing enhancements available for leaders, organizers, or managers of criminal enterprises. If the defendant's case warrants, those enhancements should be applied."[83] This Court agrees. If the Government believes a defendant is particularly culpable, a mechanism to request enhancements exists to ensure a defendant's role is taken into consideration when the sentencing court fashions its sentence. However, the Court finds methamphetamine purity is no longer an accurate way to assess culpability, and the Court refrains from using purity as a proxy for culpability moving forward.[84]

Accordingly, the Court grants Defendant's motion for downward variance based on policy grounds. The Court will apply the methamphetamine mixture Guidelines to all

---

[79] *Id.*
[80] *Id.*
[81] *Id.*
[82] *Robinson*, No. 3:21-CR-14-CWR-FKB-2, 2022 WL 17904534, at *3.
[83] *Id.*
[84] Moreover, like in *Bean*, the Court acknowledges its responsibility under § 3553(a) "'to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Bean*, 371 F. Supp. 3d at 54 (citing 18 U.S.C. § 3553(a)). The actual methamphetamine Guidelines' unusually harsh treatment of methamphetamine offenses frustrates this goal.

12

methamphetamine cases moving forward, regardless of whether the defendant requests the Court do so.

## CONCLUSION

**IT IS ORDERED** that Defendant's motion for downward variance is **GRANTED IN PART and DENIED IN PART**. Defendant's motion for a downward variance on policy grounds is granted. Defendant's motion for a downward variance on the basis of his personal circumstances, under §3553(a), is denied.[85]

**New Orleans, Louisiana, this 15th day of February, 2023.**

*Susie Morgan*
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**

---

[85] R. Doc. 52. Defendant also asks for a downward variance based on his personal circumstances. *Id*. at pp. 5-7. However, the Court is constrained by the statutory minimum term of imprisonment and a further variance is not possible. *United States v. Harper*, 527 F.3d 396, 411 (5th Cir. 2008) ("[P]ost-*Booker*[,] sentencing courts lack discretion to depart below relevant statutory minimums."). Accordingly, this portion of the motion is denied as moot.